IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-01784-LTB-CBS

ANTHONY E. DEGOURVILLE,
          Plaintiff,
v.

ANDREWS INTERNATIONAL,
TOM DAHL,
ROBERT WIBBEN,
TOM PARRISH, and
MARLA GIBSON,
          Defendants.

_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

      This civil action comes before the court on Defendant Andrews International's Motion for

Summary Judgment. Pursuant to the Order of Reference dated February 12, 2013 (Doc. # 22)

and the memorandum dated January 28, 2014 (Doc. # 65), this matter was referred to the

Magistrate Judge. The court has reviewed the Motion, Mr. DeGourville's "Motion the Court for

Pre-Trial") (treated as his Response) (*See* Docs. # 67, # 69), the Reply (Doc. # 70), the exhibits,

the entire case file, the hearings held on May 28, 2013 and April 16, 2014, and the applicable law

and is sufficiently advised in the premises.


I.      Standard of Review

      Defendant Andrews International ("Andrews") seeks summary judgment on the Amended

Complaint under Fed. R. Civ. P. 56(c). "Pursuant to Rule 56(c) of the Federal Rules of Civil

Procedure, the court may grant summary judgment where the pleadings, depositions, answers to

1

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law." *Montgomery v. Board of County Commissioners of Douglas County, Colorado*, 637 F. Supp. 2d 934, 939 (D. Colo. 2009) (internal quotation marks and citations omitted). The moving party bears the initial burden of showing that there is an absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant need only point to an absence of evidence to support the non-movant's claim. *Celotex*, 477 U.S. at 325. If the moving party meets this burden, the non-moving party may not rest upon its pleadings, but must come forward with specific facts showing that there is a genuine issue for trial as to the elements essential to the non-moving party's case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Immaterial factual disputes and evidence that is not significantly probative will not defeat a motion for summary judgment. *Ayon v. Gourley*, 47 F. Supp.2d 1246, 1252 (D. Colo. 1998).

Because Mr. DeGourville is proceeding pro se, the court construes his pleadings and other papers liberally and holds them to a less stringent standard than those drafted by lawyers. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). "The Haines rule applies to all proceedings involving a pro se litigant, including . . . summary judgment proceedings." *Hall*, 935 F.2d at 1110 n. 3 (citations omitted). However, "the generous construction" that is afforded pro se pleadings has limits, and the court "must avoid becoming the plaintiff's advocate." *Firstenberg v. City of Santa Fe, N.M.*, 696 F.3d 1018, 1024 (10th Cir. 2012) (citation omitted).

II.    Statement of the Case

Mr. DeGourville was born in Port of Spain, Trinidad in 1950. (*See* Deposition of Anthony

2

DeGourville, Exhibit 2 to Motion (Doc. # 64-6 at 3-4 of 59)). On or about March 10, 2011, Mr. DeGourville began his employment with Andrews as a part-time patrol officer at the Oracle facility located in Broomfield, Colorado. (*See id.* at 5, 9, 27-28 of 59). Andrews is an international company, specializing in providing uniformed security services, consulting and investigation services, executive protection, meeting and event security, specialized training, and disaster and emergency response to business clients. (*See* Declaration of Robert Wibben, Exhibit 1 to Motion (Doc. # 64-1) at ¶ 2). Mr. DeGourville worked the graveyard shift at the Oracle facility, which typically began between 10:30 p.m. and 11:00 p.m. and ended at approximately 7:00 a.m. (*See* Doc. # 64-6 at 13-14 of 59). As a patrol officer at the Oracle facility, Mr. DeGourville's job responsibilities included: ensuring the environment was safe for Oracle's employees by patrolling the facility on foot, checking critical buttons with an electronic stick in sensitive areas to indicate that he had visited the area, noting particular locations he had visited on daily logs, and communicating via radio with dispatch to respond to situations, escort janitors through sensitive areas, or check certain areas in the facility. (*See* Doc. # 64-6 at 8, 10-15, Doc. # 64-7 at 10-11 of 62).

Mr. DeGourville commenced this civil action on or about July 10, 2012 in his *pro se* capacity. He claims that Andrews discriminated against him based on his race, color, and national origin, created a hostile work environment on the basis of his protected categories, and retaliated against him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, discriminated against him on the basis of his age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), and violated the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA").[1] (*See* Amended Complaint (Docs. # 8 and # 6)).[2]

---

[1]     While Mr. DeGourville made an allegation of discrimination based on his "sex, male" (*see* Doc. # 6 at 1 of 3), he later clarified that he is not claiming that he was discriminated against on the basis of his

3

III.     Analysis

A.      Plaintiff's Title VII Discrimination Claims Based on Race, Color, and National Origin

Mr. DeGourville alleges that he was discriminated against based on his race, color, and national origin. More specifically, he alleges that: (a) two white males were "promoted" into dispatch ahead of him; (b) other employees received more hours; (c) he was not given the opportunity to work full-time; (d) he was denied training opportunities; and (e) he was laid off in June 2011. (*See* Doc. # 64-7 at 46-52, 55 of 62; Doc. # 64-14 at Nos. 4-5, 7-9).

Under Title VII of the Civil Rights Act of 1964, as amended, it is unlawful for an employer ". . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). As Mr. DeGourville does not present any direct evidence of discrimination, the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies to his claims of race, color, and national origin discrimination. *See Adamson v. Multi Community Diversified Services, Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008) ("Where a plaintiff relies on circumstantial evidence, the Supreme Court has established a three-step burden-shifting framework for determining whether a plaintiff's evidence raises an inference of invidious discriminatory intent sufficient to survive summary judgment"). Under the *McDonnell Douglas* analysis, "the plaintiff bears the initial burden of presenting a *prima facie* case of discrimination." *Jackson v. City and County of Denver*, 628 F. Supp. 2d 1275, 1284 (D. Colo. 2008). "If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason" for its employment decision. *Id.* at 1284-85 (internal quotation marks omitted). If the defendant employer "presents such a reason,

gender. (*See* Doc. # 64-7 at 52 of 62).
[2]     The court construes Doc. # 8 and Doc. # 6 together as the Amended Complaint.

the plaintiff bears the ultimate burden of showing that these proffered reasons are a pretext for unlawful discrimination." *Id.* at 1285.

1.    Denial of Promotion

Mr. DeGourville alleges that Andrews failed to promote him to the position of dispatch officer because of his race, color, and national origin. (*See* Doc # 64-7 at 48 of 62; Doc. # 64-14 at No. 4).[3]

> Under the familiar three-step allocation of burdens of proof mandated by McDonnell Douglas, a plaintiff alleging a failure-to-promote claim must initially establish a prima facie case, demonstrating that: (1) she was a member of a protected class; (2) she applied for and was qualified for the position; (3) despite being qualified she was rejected; and (4) after she was rejected, the position was filled. If the plaintiff carries her burden of establishing a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment action. This shifts the burden back to the plaintiff to proffer evidence that the employer's reason is pretextual.

*Jones v. Barnhart*, 349 F.3d 1260, 1266 (10th Cir.2003) (citations omitted). *See also Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1238 (10th Cir. 2002) (same). It is undisputed that Mr. DeGourville belongs to a protected class.

Mr. DeGourville claims that Mr. Wibben promoted two younger, white officers with less experience, Officers Van Maldegham and Anguelov, to dispatch over him. (*See* Doc. # 64-7 at 16-17, 43 of 62; Doc. # 64-14 at No. 15).[4] He alleges that in early June 2011, he told Mr. Wibben that he was interested in working in the dispatch area. (*See* Doc. # 64-1 at ¶ 17). Mr. Wibben explained to Mr. DeGourville that working in the dispatch area was not considered a promotion because it is a different position than the patrol officer position. (*See id.*). Mr. DeGourville

---

[3]    During his deposition, Plaintiff testified that the terms "dispatch officer" and "SOC operator" are interchangeable. (*See* Doc. # 64-6 at 15 of 59).

[4]    While Mr. DeGourville alleges that a third male and two females were also "promoted" to dispatch over him, he has not identified such individuals or provided any information about their employment circumstances. (*See* Doc. # 64-7 at 44 of 62).

acknowledges that working in the dispatch area required different responsibilities, training, and equipment than that of a patrol officer, including a prescreening test on a system known as Criticall, and that he was not familiar with those responsibilities or training requirements.   (*See* Doc. # 64-6 at 16-17, 20-21 of 59). Mr. DeGourville understood that he was hired as a patrol officer, not a dispatch officer. (*See* Doc. # 64-7 at 43-44 of 62). Mr. DeGourville concedes that he never submitted an application to work in the dispatch area and that he merely told Mr. Wibben that he was interested in working in the dispatch area at some point in time. (*See* Doc # 64-7 at 60 of 62). Mr. DeGourville has no knowledge as to whether certain applicants were hired directly into dispatch versus moving to dispatch from a patrol officer position. (*See id.* at 45 of 62). The evidence, undisputed by Mr. DeGourville, shows that Officer Van Maldegham was hired to be a dispatch officer, not a patrol officer, and thus received different training than Mr. DeGourville. (*See* Doc. # 64-1 at ¶ 18). Officer Anguelov was hired as a full-time patrol officer. (*See id.*). He began some of the dispatch officer training when Mr. DeGourville was off work in June 2011, but remained a patrol officer. (*Id.*).

        Mr. DeGourville does not present a prima facie case for failure to promote him to the dispatch area. He has not presented any evidence to show that the dispatch officer position was a promotion over the patrol officer position. *See, e.g., DeFlon v. Danka Corp.*, No. 99-2239, 1 F. App'x 807, 818 (10th Cir. 2001) (concluding that plaintiff's failure to promote claim failed where, among other things, there was no evidence establishing that the position at issue was a promotion as opposed to a lateral transfer). Mr. DeGourville never applied for or was rejected for a position in dispatch. *See, e.g., Bennett v. Quark, Inc.*, 258 F.3d 1220, 1229 (10th Cir. 2001) (holding that plaintiff failed to establish a prima facie case of discrimination because she failed to show that she applied for the position), *overruled on other grounds as explained in Boyer v. Cordant*

6

*Technologies, Inc.*, 316 F.3d 1137, 1140 (10th Cir. 2003). The evidence shows that no position in dispatch was open or filled and no one else was promoted or transferred into dispatch during the relevant time period. (*See* Doc. # 64-1 at ¶ 6 (Oracle facility was sufficiently staffed with dispatch officers during relevant time period)). Even if there had been a vacant position in the dispatch area, other than his subjective belief that he had more experience than officers already working in dispatch, Mr. DeGourville has not established that he was qualified for such a position. (*See* Doc. # 64-14 at No. 4(b)). *See, e.g., Simms v. Okla. ex rel. Dep't of Mental Health*, 165 F.3d 1321, 1329 (10th Cir.1999) (noting that an employee's own opinions about his or her own qualifications does not create a material dispute of fact), *abrogated on other grounds as recognized in Eisenhour v. Weber County*, 744 F.3d 1220 (10th Cir. 2014); *Coe v. Yellow Freight System, Inc.*, 646 F.2d 444, 449-50 (10th Cir. 1981) (holding that plaintiff failed to establish a prima facie case of discrimination because he failed to show that there was a position open or that he was qualified). In sum, because Mr. DeGourville fails to establish a prima facie case, Defendant Andrews is entitled to summary judgment on his claim for failure to promote based on his race, color, and national origin.

2.      Denial of Full-Time Employment and Additional Hours

Mr. DeGourville alleges that he was discriminated against by denial of full-time employment, resulting in fewer work hours. (*See* Doc. # 6 at 1 of 3 ("Also, my weekly hours were reduced . . . ."); Doc. # 64-7 at 48, 50 of 62). To establish a prima facie case of disparate treatment, a plaintiff must demonstrate: (i) that he belongs to a protected class; (ii) that he suffered from an adverse employment action; and (iii) that his employer treated similarly situated employees differently. *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir.2005). Adverse

7

employment action includes "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Piercy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir.2007) (internal quotation marks and citation omitted). To be similarly situated, employees must "deal with the same supervisor and [be] subject to the same standards governing performance evaluation and discipline." *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir.2006) (internal quotation marks and citation omitted).

Mr. DeGourville does not dispute that he was hired as a part-time employee and remained a part-time patrol officer during the tenure of his employment. (*See* Doc. # 64-1 at ¶¶ 4, 12; Doc. # 64-6 at 7-8 of 59; Response (Doc. # 67) at 4 of 39, ¶ 17). Part-time employees are those employees who work less than 72 hours in a bi-weekly pay period. (*See* Declaration of Camron Byington (Getty), Exhibit 5 to Motion (Doc. # 64-10) at ¶ 3). He does not dispute that he never submitted an application for a full-time position with Andrews or at the Oracle facility. (*See* Doc. # 64-1 at ¶ 4).

Mr. DeGourville does not identify other officers or present any evidence of their work hours. (*See, e.g.*, Doc. # 64-7 at 48 of 62). He does not present evidence that he suffered an adverse employment action or that other officers outside his protected classes were treated more favorably than he was with respect to their full time status or work hours. Andrews is entitled to summary judgment on Mr. DeGourville's claim that he was discriminated against by the denial of full-time employment and additional work hours.

3.      Denial of Training Opportunities

Mr. DeGourville alleges that he was not provided bicycle and vehicle training as quickly as

Caucasian officers and that he was denied an opportunity to train in the dispatch area. (*See* Doc. # 64-7 at 13-15 of 62; Doc. # 64-14 at No. 4(b)). On August 3, 2011, Mr. DeGourville sent a letter to Ms. Marla Gibson, then Vice President of Human Resources, generally complaining that, among other things, he was denied "needed training for vehicle and bicycle patrol as other officers." (*See* August 3, 2011 Letter (Doc. # 64-13); Doc. # 64-7 at 1-3, 13-16 of 62). To establish a prima facie case of discrimination for failure to train, Mr. DeGourville must show that: (1) he is a member of a protected group; (2) Andrews provided training to its employees; (3) he was eligible for training; and (4) he was not provided training under circumstances giving rise to an inference of discrimination, that is, he was denied training given to other similarly-situated employees who were not members of the protected group. *Chytka v. Wright Tree Serv.*, 925 F. Supp. 2d 1147, 1164 (D. Colo. 2012) (citations omitted).

Mr. DeGourville completed some training when he commenced his employment with Andrews, including first aid, CPR, and online skills training. (*See* Doc. # 64-1 at ¶ 16; Doc. # 64-6, at 19-20 of 59; Training Record, Exhibit 1-3 to Motion (Doc. # 64-4)). Vehicle training was only offered during the day. (*See* Doc. # 64-1 at ¶ 15). Between May 5 and 26, 2011, Mr. DeGourville missed vehicle training opportunities because he was attending classes during the day at a local education center known as the Mi Casa Resource Center. (*See* Doc. # 64-6 at 30-36 of 59; Doc. # 64-1 at ¶ 15). Between April 25, 2001 and July 15, 2011, Mr. DeGourville attended at Mi Casa four 40-hour classes, one 10-hour class, and one 80-hour class. (*See* Doc. # 64-6 at 30-36 of 59; Plaintiff's Responses to Defendant' s Second Set of Discovery, Interrogatory No. 16 (Doc. # 57 at 11-12 of 15)). Mr. DeGourville repeatedly told Mr. Wibben that school was his first priority and Mr. Wibben tried to accommodate his classes when making the work schedule. (*See* Doc. # 64-1 at ¶ 4). Mr. DeGourville also missed training opportunities while he was on leave visiting his mother.

9

He worked only three days between June 20, 2011 and July 17, 2011. (*See* Doc. # 64-10 at ¶ 6; Doc. # 64-11, Doc. # 64-6 at 52, 57 of 59).

Before Mr. DeGourville complained to Ms. Gibson on August 3, 2011, Mr. Wibben had offered him four training modules to complete, which would have made up for the missed training opportunities. (*See* Doc. # 64-1 at ¶ 15; Doc. # 64-7 at 15 of 62). When Mr. Wibben learned through Mr. DeGourville's August 3, 2011 letter that he had not completed vehicle and bicycle training, Mr. Wibben provided him another opportunity to complete the training. (*See* Doc. # 64-1 at ¶ 16). Mr. DeGourville acknowledged that after he sent the letter to Ms. Gibson, he received bicycle and vehicle training, and it was no longer an issue. (*See* Doc. # 64-7 at 15-16 of 62; August 25, 2011 Email Correspondence, Exhibit 10 to Motion (Doc. # 64-16). During his employment, Mr. DeGourville completed additional training, including public relations, report writing, access control, bloodborne pathogens, communication and its significance, bicycles, driving, observation and documentation, and liability and legal aspects. (*See* Doc. # 64-1 at ¶ 16; Doc. # 64-4; Doc # 64-7 at 15-16 of 62; Exhibit 10 to Motion (Doc # 64-16)).

The undisputed evidence shows that Officers Anguelov and Van Maldegham completed bicycle and/or vehicle training during the times that Plaintiff was taking classes at Mi Casa Resource Center during the day and was out-of state visiting his mother. (*See* Doc. # 64-1 at ¶ 15; Doc. # 64-7 at 13-14 of 62). Mr. DeGourville does not present evidence based on personal knowledge to dispute that other officers attended training while he was attending classes at the Mi Casa Resource Center and visiting his mother. (*See* Doc. # 64-6 at 58-59 of 59; Doc. # 64-7 at 1 of 62). Because it is also undisputed that bicycle and vehicle training was not required in order to perform the job duties of a patrol officer at the Broomfield facility and did not affect pay, promotions, or transfers, the alleged delay in Mr. DeGourville's completion of bicycle and vehicle

training did not constitute an adverse employment action. (*See* Doc. # 64-1 at ¶ 16). *See Luchaco v. Colo. State Patrol*, No. 08-cv-02348-LTB-KMT, 2010 WL 3430850, at *23 (D. Colo. Aug. 30, 2010) (finding that the denial of training was not an adverse employment action where the training did not impact the employee's pay, job duties, or opportunity to be promoted or transferred).

As to Plaintiff's allegation that other officers received dispatch training that he was denied, Officer Van Maldegham was hired as a dispatch officer and Plaintiff was hired as a patrol officer. (*See* Doc. # 64-1 at ¶¶ 4, 18). While Officer Anguelov was hired as and remained a full-time patrol officer, he began some of the dispatch officer training when Mr. DeGourville was off work in June 2011. (*See id.*). Because the evidence regarding Mr. DeGourville's claim addressed to vehicle, bicycle, and dispatch training does not give rise to an inference of discrimination and does not show that he was denied training given to other similarly-situated employees, he does not establish a prima facie case of discrimination for failure to train.

### 4.    June 2011 Layoff

Mr. DeGourville claims that he was discriminated against when he was laid off in June 2011. (*See* Doc. # 64-14 at No. 5). To establish a prima facie case of discriminatory discharge in violation of Title VII, Mr. DeGourville must "demonstrate that [h]e (1) belongs to a protected class; (2) was qualified for h[is] position; (3) was discharged; and (4) h[is] position was not eliminated after h[is] discharge." *Adamson*, 514 F.3d at 1150 (citations omitted). *See also Luster v. Vilsack*, 667 F.3d 1089, 1095 (10th Cir. 2011) ("To establish a prima facie disparate treatment claim, a plaintiff must present evidence that (1) she belongs to a protected class; (2) she suffered an adverse employment action; and (3) the adverse action occurred under circumstances giving rise to an inference of discrimination.") (citation omitted). "The critical prima facie inquiry in all cases is

11

whether the plaintiff has demonstrated that the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination." *Adamson,* 514 F.3d at 1151 (internal quotation marks and citation omitted).

For purposes of the Motion only, Defendant does not contest that Mr. DeGourville can establish a prima facie case of discriminatory discharge. (*See* Doc. # 64 at 28 of 42). If the court assumes that Mr. DeGourville has made out a prima facie claim, then "a presumption of discrimination arises," resulting in the burden shifting to the employer "to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Jaramillo v. Colorado Judicial Dept.*, 427 F.3d 1303, 1307 (10th Cir. 2005) (citations omitted). At this stage of the *McDonnell Douglas* analysis, defendants' burden is "exceedingly light;" defendants must merely proffer non-discriminatory reasons, not prove them. *Zamora*, 478 F.3d at 1165-66 (internal quotation marks and citation omitted). *See also Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1173 (10th Cir. 2007) (same) (internal citation omitted); *EEOC v. Flasher Co., Inc.*, 986 F.2d 1312, 1317 (10th Cir. 1992) (at this stage, defendant is required only to "explain its actions against the plaintiff in terms that are not facially prohibited by Title VII."), *rev'd on other grounds by Kendrick v. Penske Transp. Serv., Inc.*, 220 F.3d 1220 (10th Cir. 2000).

"If the defendant carries its burden of production, the presumption of discrimination drops out of the case," and "[t]he burden then shifts back to the plaintiff, who must prove by a preponderance of the evidence that the employer's reasons are a pretext for unlawful discrimination." *Jaramillo*, 427 F.3d at 1307. *See also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147–49 (2000) (A plaintiff can withstand summary judgment if she presents evidence sufficient to raise a genuine dispute of material fact regarding whether the defendant's articulated reasons for the adverse employment action are pretextual.). To show pretext, a plaintiff

must produce evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Jones v. Oklahoma City Public Schools*, 617 F.3d 1273, 1280 (10th Cir. 2010) (internal quotation marks and citation omitted).

> To support an inference of pretext, to suggest that something more nefarious might be at play, a plaintiff must produce evidence that the employer did more than get it wrong. He or she must come forward with evidence that the employer didn't really believe its proffered reasons for action and thus may have been pursuing a hidden discriminatory agenda.
> This is because Title VII licenses us not to act as a "super personnel department" to undo bad employment decisions; instead, it charges us to serve as a vital means for redressing discriminatory ones.

*Johnson v. Weld County, Colorado*, 594 F.3d 1202, 1211 (10th Cir. 2010) (citation omitted).

Evidence of pretext may take a variety of forms. *Swackhammer v. Sprint/United Management Co.*, 493 F.3d 1160, 1167-68 (10th Cir. 2007). *See also Kendrick*, 220 F.3d at 1230 (employee may show employer's proffered reason to be pretextual in a variety of ways: by showing that the stated reason is false, by showing that the employer acted contrary to a written company policy, or by showing that the employer acted contrary to an unwritten company policy or practice, among others). The plaintiff bears the burden of showing that each reason given by the employer is unworthy of credence. *Jaramillo*, 427 F.3d at 1308.

In determining whether the proffered reasons for a decision were pretextual, the court must examine "the facts as they appear to the person making the decision" to lay off Mr. DeGourville. *Salguero v. City of Clovis*, 366 F.3d 1168, 1176 (10th Cir. 2004) (internal quotation marks and citations omitted). "The relevant inquiry is not whether [the employer's] proffered reasons were wise, fair or correct, but whether [it] honestly believed those reasons and acted in good faith upon those beliefs." *Rivera v. City and County of Denver*, 365 F.3d 912, 925 (10th Cir. 2004) (internal

quotation marks and citation omitted). *See also Miller v. Eby Realty Group LLC*, 396 F.3d 1105, 1111 (10th Cir. 2005) ("Pretext exists when an employer does not honestly represent its reasons for terminating an employee."). "The factfinder must be able to conclude, based on a preponderance of the evidence, that discrimination was a determinative factor in the employer's actions – simply disbelieving the employer is insufficient." *Miller*, 396 F.3d at 1111. Once the employer's proffered reason is shown to be pretextual, the factfinder may infer that prohibited discrimination is the real cause for the adverse action. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519   (1993), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167 (2009).

On March 10, 2011, Mr. DeGourville acknowledged receipt of Andrews' Employee Handbook. (*See* Doc. # 64-6 at 22-24 of 59; March 10, 2011 Employee Handbook Acknowledgement, Exhibit 3 to Motion (Doc. # 64-8); Excerpts of Andrews' Employee Handbook, Exhibit 4 to Motion (Doc. # 64-9); Responses to Defendant's Requests for Admission, Exhibit 13 to Motion (Doc. # 64-19) at 1-2 of 2). He understood that he was an at-will employee and that Andrews could terminate his employment at any time, with or without cause. (*See* Doc. # at 23-26 of 59).

On or about June 3, 2011, Andrews learned that Oracle was eliminating a 40-hour dispatch officer position at its Broomfield facility, effective June 10, 2011. (*See* Doc. # 64-1 at ¶ 5; June 3, 2011 Email Correspondence, Exhibit 1-1 to Motion (Doc. # 64-2)). Originally, that 40-hour dispatch position was for a dispatcher position during a day shift.   (*See id.* at ¶ 6). Because all three dispatcher shifts (day, swing and night shifts) were fully staffed, Mr. Wibben used that 40-hour position to fill a part-time patrol officer position. (*See id.*). When Oracle reduced the contract with Andrews by 40 hours on June 3, 2011, Mr. Wibben had to cut the additional part-time

14

patrol officer position. (*See id.*). Mr. Wibben decided to eliminate Mr. DeGourville's position because his schedule was the least flexible compared with other patrol officers due to his preference to attend classes during the day and to work specific days. (*See* Doc. # 64-1 at ¶ 6). Mr. Wibben communicated his decision to Elsie Childers, Human Resources Manager, shortly after June 3, 2011. (*See id.* at ¶ 7). On June 6, 2011, Ms. Childers communicated to Mr. Wibben that Plaintiff would be laid off on June 10, 2011. (*See id.*; June 6, 2011 Email Correspondence, Exhibit 1-2 to Motion (Doc. # 64-3)). Mr. DeGourville's last day of employment was June 12, 2011. (*See* Doc. # 64-10 at ¶ 6).

Less than 10 days after Mr. DeGourville was laid off, more hours became available at the Oracle facility because another patrol officer resigned from his employment with Andrews. (*See* Doc. # 64-1 at ¶ 8). Mr. Wibben promptly telephoned Mr. DeGourville and asked him if he would like to return to work. (*See* Doc. # 64-1 at ¶ 8; Doc. # 64-6 at 52 of 59). During their conversation, Mr. Wibben approved Mr. DeGourville's request for two weeks off to visit his mother at the end of June and beginning of July. (*See* Doc. # 64-1 at ¶ 8; Doc. # 64-6 at 52-54 of 59). Mr. DeGourville returned to work at the Oracle facility on June 20, 2011 and worked on June 21, 22, and 25, 2011 prior to leaving to visit his mother. (*See* Doc. # 64-1 at ¶ 8; Doc. # 64-6 at 53-54 of 59; Doc. # 64-10 at ¶ 6; Doc. # 64-11 at 3 of 4).

Plaintiff traveled to Connecticut to visit his mother on June 27, 2011. (*See* Doc. # 64-6 at 54-55 of 59). While he was in Connecticut, he spoke with Mr. Wibben and understood that Mr. Wibben expected him to work after his scheduled return to Denver on July 9, 2011. (*See* Doc. # 64-1 at ¶ 9; Doc. # 64-6 at 56 of 59). Shortly after Mr. DeGourville returned to Denver on July 9, 2011, he spoke with Mr. Wibben and told him that he could not report to work until July 17, 2011, because he was still visiting his mother. (*See* Doc. # 64-1 at ¶ 10; Doc. # 64-6 at 55-57 of 59). Mr.

Wibben did not know that Plaintiff had returned to Denver on July 9, 2011 and made last minute arrangements to cover the shifts he had scheduled Plaintiff to work. (*See* Doc. # 64-1 at ¶¶ 9-10; Doc. # 57 at 10 of 15; Doc. # 64-6 at 54-55 of 59). Mr. DeGourville returned to work on July 17, 2011. (*See* Doc. # 64-6 at ¶ 57 of 59).

Andrews articulates adequate non-discriminatory grounds for the decision to lay off Mr. DeGourville, thus satisfying its burden under the *McDonnell Douglas* burden-shifting analysis. Andrews presents evidence that it laid Mr. DeGourville off for less than ten days after Oracle reduced the number of hours on its contract by 40 hours per week and because his schedule was the least flexible compared with other patrol officers due to his schedule preferences. The burden reverts back to Mr. DeGourville to show that "there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual – i.e., unworthy of belief." *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995).

Mr. DeGourville presents no evidence to demonstrate that Andrews's legitimate and non-discriminatory reasons for the decision to briefly terminate his employment in June 2011 were a pretext for discrimination. His arguments (*see, e.g.,* Doc. # 67 at 3-4, 6-7 of 39) are not supported by evidence in the record. Mr. DeGourville presents no evidence to create an inference that Andrews based its decision on any animus related to his race, color, or national origin. Andrews promptly rehired Mr. DeGourville as soon as more hours became available at the Oracle facility. The same decision-maker, Mr. Wibben, selected Mr. DeGourville for the layoff in June 2011 and rehired him less than ten days later. *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1183 (10th Cir. 2006) (Where "the employee was hired and fired by the same person within a relatively short time span, there is a strong inference that the employer's stated reason for acting against the employee is not pretextual.") (internal quotations omitted). This inference is

16

unrebutted by any evidence. Mr. DeGourville's letters of reference do not address or demonstrate any knowledge of the facts and circumstances of this case. (*See* Doc. # 67 at 32-39 of 39). He has not presented facts from which a reasonable jury could conclude that the decision to lay him off was so meritless as to call into question its actual motivation. *See Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1228 (10th Cir. 2008) (finding no evidence "of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.") (internal quotation marks and citation omitted). Defendant Andrews is entitled to summary judgment on Plaintiff's claim that he was discriminated against when he was selected to be laid off in June 2011.

B.     Retaliation

Mr. DeGourville appears to allege that Andrews terminated his employment in retaliation for the two complaint letters that he sent to Human Resources in August 2011. (*See* Doc. # 64-7 at 54 of 62; Doc. # 64-14 at No. 11; Doc. # 67 at 8 of 39). Title VII forbids retaliation against an employee because he has "opposed" any practice made unlawful by Title VII, or because he has "participated . . . in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Where there is no direct evidence of retaliation, the burden-shifting analysis established in *McDonnell Douglas* also applies to retaliation claims. *Kendrick*, 220 F.3d at 1229-30. *See also Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (a plaintiff can prove retaliation "by relying on the three-part McDonnell Douglas framework") (internal quotation marks omitted). To establish a prima facie claim of retaliation, a plaintiff is required to prove that

17

(1) he engaged in protected activity, (2) a reasonable employee would have found the challenged action materially adverse, and (3) there is a causal connection between the protected activity and the adverse employment action. *McGowan v. City of Eufala*, 472 F.3d 736, 741 (10th Cir. 2006) (citation omitted). *See also Khalik*, 671 F.3d at 1193 (same). "As with claims for discriminatory discharge, if the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a nondiscriminatory reason for the adverse employment action. If the employer satisfies this burden of production, then, in order to prevail on her retaliation claim, the plaintiff must prove that the employer's articulated reason for the adverse action is pretextual, *i.e.* unworthy of belief." *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1264 (10th Cir. 2001) (internal quotation marks and citations omitted). *See also Stover v. Martinez*, 382 F.3d 1064, 1070-71 (10th Cir. 2004) (when a defendant asserts non-discriminatory reasons for its actions, a plaintiff must also establish that the defendant's reasons are a pretext for retaliation). Andrews does not argue that Mr. DeGourville fails to establish a prima facie case of retaliation. (*See* Doc. # 64 at 34 of 42). Even if the court assumes that he can satisfy his prima facie case of retaliation under Title VII, Mr. DeGourville must still prove that the legitimate, non-retaliatory reasons that Andrews presents for his termination were pretextual or unworthy of belief.

On August 3, 2011, Mr. DeGourville sent a letter to Ms. Marla Gibson, then Vice President of Human Resources, complaining that: (a) he was not assigned a nametag or locker; (b) he was laid off in June 2011; (c) his hours decreased from 40 to 24 after he complained to Mr. Wibben that dispatch workers were still not "buzzing" him into the facility as quickly as he wanted and that Officer Anzman had made a bomb threat; (d) he was denied training and advancement opportunities to take vehicle and bicycle training; and (e) his requests to be "promoted" into the dispatcher position were ignored by Mr. Wibben. (*See* Doc. # 64-7 at 1-3, 5-9, 12-13; Doc. #

18

64-13). Tom Dahl, Senior Director for the Central Region, was directed to investigate Plaintiff's complaints. (*See* Declaration of Tom Dahl, Exhibit 6 to Motion (Doc. # 64-12) at ¶¶ 2, 3, 5). As part of his investigation, Mr.Dahl gathered additional information from Mr. Wibben and others. (*See id.* at ¶ 5).

On August 10, 2011, Mr. Wibben met with Plaintiff to address the concerns raised in his August 3, 2011 letter and prepared a written memorandum memorializing their discussion. (*See* Doc. # 64-1 at ¶ 19; Doc. # 64-7 at 17 of 62). On August 15, 2011, Plaintiff and Mr. Wibben met a second time to review the memorandum that Mr. Wibben had prepared. (*See* Doc. # 64-1 at ¶ 20; Doc. # 64-7 at 18-20 of 62; August 15, 2011 Memorandum, Exhibit 9 to Motion (Doc. # 64-15)). After reviewing the contents of the memorandum, Mr. DeGourville wrote "no comment" in the comments portion of the memorandum and returned the document to Mr. Wibben. (*See* Doc. # 64-7 at 20 of 62). However, later during his shift, Mr. DeGourville: (a) went into Mr. Wibben's office without permission; (b) located the memorandum on Mr. Wibben's desk; (c) scratched out the "no comment" remark that he originally wrote; and (d) added several new comments, including

> I reminded everyone in dispatch that to show respect and professionalism. I was never rude to know one. In our discussion Robert told me that I could have Friday and Saturdays off on the graveyard shift. I would like to reconsider training in the SOC area. It would be helpful to learn as much as possible.

(*See id.* at 20-23 of 62; Doc. # 64-15). Plaintiff states that later in the day, he telephoned Mr. Wibben and told him that he had entered the office and made changes to the memorandum because he did not agree with all of the paragraphs in the memorandum. (*See* Doc. # 64-7 at 24-25 of 62). Mr. Wibben indicated that he was unaware that any changes had been made to the August 15, 2011 memorandum until Plaintiff asked for a copy and Mr. Wibben retrieved the document. (*See* Doc. # 64-1 at ¶ 20). Mr. Wibben notified Mr. Dahl that Plaintiff entered his office and altered the memorandum without his permission. (*See id.*; Doc # 64-12 at ¶ 6). Mr. Dahl

19

investigated this incident. (*See* Doc. # 64-12 at ¶ 6).

On August 25, 2011, Mr. DeGourville sent an email to Ms. Gibson thanking her for promptly investigating his August 3, 2011 complaints. (*See* Doc. # 64-7 at 29-30 of 62; August 25, 2011 Email Correspondence, Exhibit 10 to Motion (Doc. # 64-16)). Plaintiff acknowledged that he received a nameplate, bicycle and vehicle training, and locker. (*See* Doc. # 64-7 at 15-16 of 62; Doc. # 64-16). Mr. DeGourville complained he was scheduled to have Thursday and Friday off, rather than Friday and Saturday. (*See* Doc. # 64-16). He also complained that when he confronted Mr. Wibben on August 25, 2011 about his work schedule, Mr. Wibben raised his voice, told him that he was raising his blood pressure and that he had enough of him. (*See* Doc. # 64-7 at 26-28 of 62; Doc. # 64-16). Mr. DeGourville also indicted that he did not agree with the memorandum that Mr. Wibben had prepared; that Mr. Wibben was not truthful about the concerns that he raised; and that he had only signed the memorandum with the promise of getting full-time hours, a set schedule, and Fridays and Saturdays off. (*See* Doc. # 64-16). Mr. Dahl also investigated these additional matters. (*See* Doc. # 64-12 at ¶ 7).

On August 27, 2011, Mr. DeGourville came to the Oracle facility when he was not scheduled to work. (*See* Doc. # 64-7 at 31-32 of 62). Plaintiff explains that he went to work to get his lunch box. (*See id.*). Mr. Wibben received an email from the Oracle Security Operations Center reporting that Officers Van Maldegham and Allain observed Plaintiff wearing an unkempt uniform and smelling of alcohol and that Officer Garsia escorted Plaintiff off the facility because he tried to enter through a security entrance when he was not scheduled to work. (*See* Doc. # 64-1 at ¶ 21; August 27, 2011 Email Correspondence, Exhibit 1-4 to Motion (Doc. # 64-5)). Mr. Wibben forwarded the email to Andrews' management. (*See id.*).

Mr. Dahl began investigating this incident and spoke to Mr. DeGourville on the telephone

on or about August 29, 2011. (*See* Doc. # 64-12 at ¶¶ 8-10; Doc. # 64-7 at 32-34 of 62). Also on

August 29, 2011, Plaintiff submitted a doctor's note to Andrews stating that he could not return to

work until September 13, 2011 because he was ill. (*See* Doc. # 64-7 at 35-36 of 62; August 29,

2011 Medical Slip, Exhibit 11 to Motion (Doc. # 64-17)). On September 12, 2011, Mr. Dahl

telephoned Plaintiff to ask if he was able to return to work on September 13, 2011. (*See* Doc. #

64-12 at ¶ 11). Also on September 12, 2011, Mr. DeGourville submitted a second doctor's note

stating that he could not return to work until September 19, 2011. (*See* Doc. # 64-7 at 35-37 of 62;

September 12, 2011 Medical Slip, Exhibit 12 to Motion (Doc. # 64-18)).

    At the conclusion of his investigation, Mr. Dahl determined that most of Mr. DeGourville's

allegations could not be substantiated, were contradicted by other evidence, or had been

resolved. (*See* Doc. # 64-12 at ¶ 12). Mr. DeGourville had admitted that he entered Mr. Wibben's

office and altered the memorandum without his permission. (*See id.*; Doc. # 64-7 at 22 of 62). With

corroboration by several employees, Mr. Dahl determined that Plaintiff had engaged in

unprofessional behavior when he came to work unscheduled on August 27, 2011. (*See* Doc. #

64-12 at ¶ 12). Mr. Dahl recommended to Andrews' management that Mr. DeGourville's

employment be terminated because he had violated Andrews' policy against the alteration of

company documents and because he violated workplace policies when he had to be escorted off

of the Broomfield facility on August 27, 2011. (*See id.* at ¶ 13). Andrews ' management agreed

with Mr. Dahl's recommendation and terminated Mr. DeGourville's employment because he had

entered Wibben's office and altered a document without Wibben's permission. (*See* Doc. # 64-12

at ¶ 13). At the direction of Andrews' management, Mr. Dahl notified Plaintiff on September 19,

2011 that his employment was terminated. (*See* Doc. # 64-7 at 38-41 of 62; Doc. # 64-12 at ¶ 14).

    Andrews has established its burden of demonstrating legitimate, non-discriminatory

reasons for Mr. DeGourville's termination. The burden thus shifts back to Plaintiff to demonstrate that Andrews' decision was merely a pretext for retaliation. To establish a causal connection between a protected activity and an adverse employment action, a plaintiff must prove that the adverse employment action would not have occurred "but for" her protected activity. *Vialpando v. Johanns*, 619 F. Supp. 2d 1107, 1118 (D. Colo. 2008). Mr. DeGourville does not meet his burden.

Mr. DeGourville does not dispute the evidence that he frequently worked less than 40 hours per week before he complained about his hours and more than 24 hours per week after he complained. (*See* Doc. # 64-7 at 12, 50-51 of 62; Doc. # 64-10 at ¶¶ 4, 7-8; Payroll Detail Report By Employee, Exhibit 5-1 to Motion (Doc. # 64-11); Doc. # 64-1 at ¶ 13). For example, he worked 32 hours the week of March 14-20, 2011, 27 hours the week of March 20-27, 2011; 21 hours the week of March 28-April 3, 2011, 29 hours the week of April 4-10, 2011, 33 hours the week of May 9-15, 2011; 39 hours the week of May 16-22, 2011; 32 hours the week of May 30-June 5, 2011, 24 hours the week of June 6-12, 2011; 24 hours the week of June 20-26, 2011; 32 hours the week of July 18-24, 2011; 25 hours the week of July 25-31, 2011, 32 hours the week of August 1-7, 2011, 33 hours the week of August 8-14, 2011; 40 hours the week of August 15-21, 2011, and 32 hours the week of August 22-28, 2011. (*See id.*). While Mr. DeGourville disputes some of the August 27, 2011 events, it is undisputed that he came to the Oracle facility when he was not scheduled to work and that he was escorted off the premises by Officer Garsia. (See Doc. # 64-7 at 31-32). He admits that he entered Mr. Wibben's office without permission, took the memorandum from Mr. Wibben's desk, and altered it. (*See* Doc. # 64-7 at 20-23 of 62; Doc. # 64-15; Doc. # 64-12 at ¶11). This conduct violated Andrews' policies. (*See* Employee Handbook Andrews International, Inc., Exhibit 4 to Motion at 3 of 5 (expressly prohibiting "[f]alsifying employment records, employment information, or other Company records); Doc. # 64-7 at 40). Plaintiff has presented no evidence to

demonstrate that Andrews did not honestly believe that he had engaged in misconduct. (*See* Doc. # Doc. # 64-7 at 22, 40 of 62). "[T]he pertinent question in determining pretext is not whether the employer was right to think the employee engaged in misconduct, but whether that belief was genuine or pretextual." *Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1206 (10th Cir. 2000) (citation omitted). *See also Piercy v. Maketa*, 480 F.3d 1192, 1200 (10th Cir. 2007) ("A challenge of pretext . . . requires a court to look at the facts as they appear to the person making the decision to terminate, not the aggrieved employee.") (internal quotation marks and citation omitted); *Locke v. Grady County*, No. 10-6278, 2011 WL 3648140, at * 5 (10th Cir. Aug. 19, 2011) (facts appearing to decisionmaker at the time provided a legitimate, non-discriminatory reason for firing plaintiff). Mr. DeGourville does not present evidence "sufficient to raise a genuine doubt about Defendant's motivation." *Jones*, 349 F.3d at 1268 (internal quotation marks and citation omitted). The evidence does not support a claim that Mr. DeGourville would not have been terminated from his employment "but for" protected activity. Mr. DeGourville's claim for retaliation fails because Defendant Andrews articulates a legitimate reason for its termination decision and Plaintiff has not met his burden of showing that Defendant's proffered basis for his termination was a pretext for retaliation.

C.    Hostile Work Environment

Mr. DeGourville alleges that he was subjected to a hostile work environment in violation of Title VII.   He alleges that: (a) he was spoken to in a Jamaican accent three or four times in April to May 2011; (b) he was called a "troublemaker" two times in April; (c) dispatch officers spoke to him in a condescending tone over the radio three to four times a week during May and June 2011; (d) he was not "buzzed" into the facility quickly enough because it took four or five minutes to get into

the building; (e) one of the dispatch officers purportedly made a bomb threat in May 2011, which he never reported to Oracle; (f) he was told by another employee that Mr. Wibben said he was going to get rid of Plaintiff; and (g) other employees said he was from the "ghetto of Denver." (*See* Doc. # 64-6 at 38-49 of 59; Doc. # 64-7 at 56-59 of 62; Doc. # 64-14 at No. 6).

"Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986). "To survive summary judgment on a claim alleging a racially hostile work environment, [the plaintiff] must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and that the victim "was targeted for harassment because of [her] race or national origin." *Hernandez v. Valley View Hospital Assn.*, 684 F.3d 950, 957 (10th Cir. 2012) (internal quotation marks and citation omitted). *See also Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998) ("Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at" discrimination because of race, color, religion, sex, or national origin.). "A pervasively hostile work environment is not established by demonstrating a few isolated incidents of racial enmity or sporadic racial slurs. Instead, there must be a steady barrage of opprobrious racial comments." *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 (10th Cir.2007) (internal quotation marks and citation omitted). The "totality of the circumstances" test is the "touchstone" of the analysis of hostile work environment claims. *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 799 (10th Cir. 2007) (internal quotation marks and citation omitted). The court examines the record from both an objective and subjective standpoint, looking "at all the circumstances from the perspective of a reasonable person in the plaintiff's position." *Herrera*, 474 F.3d at 680 (internal quotation marks and citation omitted).

24

Mr. DeGourville alleges that his work environment was hostile because three to four times in April and May of 2011, two dispatch officers, Officer Anzman and another unidentified officer, "mocked" him by speaking to him in a Jamaican accent, even though he is not Jamaican. (*See* Doc. # 64-6 at 38-45 of 59 ("Hey man. What happening, man? . . . What happening, man?. . . What going on, man?") (*See* Doc. # 64-7 at 57, 59). Plaintiff told his supervisor at the time, Sean Manka, that he did not like the way Officer Anzman and the other unidentified officer spoke to him. (*See* Doc. # 64-6 at 43-46 of 59).[5] Mr. DeGourville concedes that Mr. Manka promptly spoke to the officers, they stopped speaking to him in a Jamaican accent, and there were no further problems. (*See id.* at 48-49 of 59).

Plaintiff claims also that two times in April 2011 Officer Anzman referred to him as a "troublemaker" and that in early June 2011 he complained to Mr. Wibben that three to four times a week during May and June 2011 the dispatch officers were speaking to him in a condescending tone over the radio. (*See* Doc. # 64-7 at 47-48, 57-59 of 62). He further claims he told Mr. Manka that when he reported to work the dispatchers did not "buzz" him into the facility quickly enough, taking as long as four or five minutes to admit him. (*See* Doc. # 64-6 at 46-48 of 59). He concedes that it is possible that he was not "buzzed" into the facility as quickly as he would have liked because the dispatch officers were occupied with other tasks. (*See id.* at 47-48 of 59). He claims that he told Mr. Wibben in early May that the dispatch officers were still not "buzzing" him into the building quickly as he would have liked. (*See* Doc. # 64-7at 6-7 of 62). Mr. Wibben responded "that they do it to him too." (*See id.*).

Mr. DeGourville claims that he also told Mr. Wibben that one of the dispatch officers, whom he believed to be Officer Anzman, reported a false bomb threat over the radio in order to scare

---

[5]       Sometime in May 2011, Mr. Wibben replaced Mr. Manka as Plaintiff's supervisor. (*See* Doc. # 64-6 at 38 of 59).

him. (*See* Doc. # 64-7 at 7-9, 56 of 62). Plaintiff admitted that although he was required to file a report with Oracle whenever a bomb threat occurred, he did not do so "because I knew it was – it was just kind of like saying something" and "if I was to put those things in writing, they could get in real trouble. So I was trying to protect the company". (*See id.* at 7-8 of 62).

Mr. DeGourville's allegations and evidence regarding these incidents do not demonstrate that the conditions of his employment were sufficiently severe or pervasive to establish a claim for hostile work environment. "One of the critical inquiries in a hostile environment claim must be the *environment*. Evidence of a general work atmosphere . . .  -- as well as evidence of specific hostility directed toward the plaintiff -- is an important factor in evaluating the claim." *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1415 (10th Cir. 1987) (emphasis in original) (citations omitted). Mr. DeGourville does not present sufficient evidence tending to show that his work environment was charged with racial animus or that anyone at Andrews harbored racial animus toward him. Three or four greetings in a Jamaican accent do not demonstrate a hostile work environment. Mr. DeGourville does not show that being called a "troublemaker" by a coworker has any discriminatory connotation. He does not explain how the dispatchers taking four or five minutes to "buzz" him into the facility has any connection to his race, color, or national origin. He provides no evidence that other employees were treated differently by the dispatchers. His allegation that unidentified dispatch officers spoke to him in a condescending tone over the radio on unidentified occasions is too amorphous to support his claim of hostile work environment. He interpreted the alleged bomb threat as a prank and did not take it seriously. *See Faragalla v. Douglas County School Dist. RE 1*, 411 F. App'x 140, 154 (10th Cir. Jan 12, 2011) (conduct did not rise to the level of an extremely serious incident that is susceptible to an inference of a hostile work environment). There is no evidence in the record that any of the alleged conduct unreasonably interfered with his

work performance. The alleged events, considered individually or together, establish at most discourteous treatment and do not establish any unambiguous discriminatory animus. *See e.g., Faragalla*, 411 F. App'x at 154 ("The mere utterance of a statement which engenders offensive feelings in an employee would not affect the conditions of employment to a sufficiently significant degree to violate Title VII.") (citation omitted); Robinson *v. Cavalry Portfolio Servs., LLC*, 365 F. App'x 104, 120 (10th Cir. 2010) ("Without discriminatory overtones, discourteous treatment is simply not sufficient to impose liability under Title VII.") (citation omitted).

Mr. DeGourville also claims that his work environment was hostile because he was told by Officer Schnider that Mr. Wibben said he was going to get rid of Plaintiff. (*See* Doc. # 64-7 at 4 of 62). Mr. Wibben denies making such a statement. (*See* Doc. # 64-1 at ¶ 11). In any event, Plaintiff did not hear Mr. Wibben make this comment and has no personal knowledge whether Mr. Wibben made this comment to Officer Schnider. (*See id.* at 4-5 of 62). This allegation is based on nothing more than inadmissible hearsay. *See, e.g., Johnson v. Weld County*, 594 F.3d 1202, 1219 (10th Cir. 2010) (refusing to consider inadmissible hearsay at summary judgment stage); *Riggs v. AirTran Airways, Inc.,* 497 F.3d 1108, 1121 (10th Cir. 2000) ("Ms. Riggs admitted that she was not present during this conversation. Accordingly, her hearsay testimony is inadmissible in support of, or opposition to, summary judgment.") (internal quotation marks and citation omitted); *Wright-Simmons v. City of Oklahoma City*, 155 F.3d 1264, 1268 (10th Cir. 1998) (noting that hearsay testimony may not be considered to oppose a motion for summary judgment).[6]

After considering the facts and inferences in Mr. DeGourville's favor and considering the "general work atmosphere . . . [and the] evidence of specific hostility directed toward the plaintiff .

---

[6]     Mr. DeGourville further claims that dispatch employees stated he lived in the "Ghetto of Denver." (*See* Doc. # 64-14 at No. 6). There is no evidence in the record to support such a claim. During his deposition Mr. DeGourville did not mention this incident as a basis for his hostile work environment claim. (*See* Doc. # 64-7 at 56-59 of 62).

. . ," the court concludes that he has not met his burden of showing hostile work environment discrimination.   *See Hicks*, 833 F.2d at 1415. Defendant Andrews is entitled to summary judgment on Mr. DeGourville's hostile work environment claim.


D.   ADEA Claim

Mr. DeGourville alleges that he suffered discrimination and retaliation based on his age. (*See* Doc. # 8 at ¶ 6; Doc. # 6 at 1 of 3). In August of 2012 he was sixty-one (61) years old.   (*See id.*). He alleges that: (a) Andrews "promot[ed]" Officers Van Maldeghem and Anguelov, two younger white males with less experience, to dispatch, where the pay was "a couple more dollars an hour;" and (b) when he indicated that he was interested in working in the dispatch area, Mr. Wibben said that dispatch was "too stressful" for him and that the position was for "younger officers". (*See* Doc. # 64-7 at 16-17, 43-45 of 62; Answers to Interrogatories, Exhibit 8 to Motion (Doc. # 64-14) at Interrogatory Nos. 4, 15).

The ADEA "provides a remedy for discrimination in private employment on the basis of age." *Maxey v. Restaurant Concepts II, LLC*, 654 F.Supp.2d 1284, 1291 (D.Colo.2009) (citations omitted). To prevail on his claim under the ADEA, Mr. DeGourville must prove by a preponderance of the evidence that his age was the "but-for" cause of his allegations of adverse action. *Gross v. FBL Financial Servs., Inc.*, 557 U.S. 167, 177-78 (2009); *accord Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 557 (10th Cir.1996) (age must be a "determining factor" in the employer's challenged decision before liability will attach under the ADEA). Whether Mr. DeGourville attempts to establish his age discrimination claim with direct or circumstantial evidence or both, at all times he "retains the burden of persuasion to establish that age was the 'but for' cause of the employer's adverse action." *Gross*, 557 U.S. at 177. *See also Jones v. Okla*.

28

*City Pub. Sch.*, 617 F.3d 1273, 1277 (10th Cir. 2010) ("[T]o succeed on a claim of age discrimination, a plaintiff must prove by a preponderance of the evidence that her employer would not have taken the challenged action but for the plaintiff's age.").

To the extent that Mr. DeGourville presents evidence of age discrimination in the form of Mr. Wibben's alleged statement that dispatch was "too stressful" for him and that the position was for "younger officers," "[d]irect evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption." *Steele v. Kroenke Sports Enters.*, L.L.C., 264 F. App'x 735, 744-745 (10th Cir. Colo. 2008). Direct evidence "includes oral or written statements on the part of a defendant showing a discriminatory motivation" and "demonstrates on its face that the employment decision was reached for discriminatory reasons." *Id.* (internal quotation marks and citation omitted); *Riggs*, 497 F.3d at 1117 (internal quotation marks and citation omitted).

Mr. Wibben denies that he ever stated that a dispatch job "would be too stressful for" Mr. DeGourville or that that "those positions are for younger officers." (*See* Doc. # 64-1 at ¶ 17). Even assuming without deciding that Mr. Wibben made such a statement, Mr. DeGourville does not demonstrate a direct link between such statement and the fact that he did not obtain a job in the dispatch area. Mr. DeGourville concedes that he never submitted an application to work in the dispatch area and that he merely told Mr. Wibben that he was interested in working in the dispatch area at some point in time. (*See* Doc # 64-7 at 60 of 62).

To the extent that he relies on circumstantial evidence of disparate treatment under the ADEA, Mr. DeGourville must set forth a *prima facie* case of discrimination. *MacKenzie*, 414 F.3d at 1277 (citations omitted). The *McDonnell Douglas* proof standard applies to ADEA claims. *Faulkner v. Super Valu Stores*, 3 F.3d 1419, 1425 n. 2 (10th Cir. 1993). Mr. DeGourville establishes a *prima facie* case of age discrimination by showing that he "was (1) within the

29

protected age group; (2) doing satisfactory work (qualified for the position); (3) discharged (or adversely affected by defendant's employment decision); and (4) replaced by a younger person." *Jones v. Unisys Corp.*, 54 F.3d 624, 630 (10th Cir. 1995) (citation omitted). Because a plaintiff is not always replaced with another employee, the *McDonnell Douglas* burden-shifting scheme may be modified so that a plaintiff may demonstrate the fourth element by producing "evidence, circumstantial or direct, from which a fact-finder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue." *Jones*, 54 F.3d at 630 (internal quotation marks and citation omitted). "The fourth element may also be shown by circumstantial evidence that a plaintiff was treated less favorably than younger employees." *Id.* (citation omitted). "Once a plaintiff establishes a prima facie case the burden of production shifts to the defendant to show a legitimate, nondiscriminatory reason for the decision." *Jones*, 54 F.3d at 630 (internal quotation marks and citations omitted). "If the defendant offers evidence of a legitimate nondiscriminatory reason for its employment decision, the presumption of discrimination established by the prima facie showing simply drops out of the picture." *Jones*, 54 F.3d at 630 (internal quotation marks and citations omitted). "The plaintiff must then offer evidence that age was a determining factor in the challenged decision by either showing that the defendant's proffered reasons were really a pretext for age discrimination or by producing direct evidence of age discrimination." *Jones*, 54 F.3d at 630 (citations omitted).

Even assuming without specifically deciding that Mr. DeGourville can establish a prima facie case of age discrimination, Andrews presents legitimate nondiscriminatory reasons that he was not hired into the dispatch area and he presents no evidence of any pretext for age discrimination. Mr. Wibben's alleged comments were too isolated and ambiguous to establish age discrimination. *See Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994)

(CEO's statement that the hospital "need[s] some new young blood" and that "long-term employees have a diminishing return" are stray remarks and insufficient to defeat hospital's motion for summary judgment in age discrimination case). Mr. DeGourville concedes that he never submitted an application to work in the dispatch area. (*See* Doc # 64-7 at 60 of 62). He does not establish that he was qualified for a position in the dispatch area. He has not demonstrated that during the relevant time period any position in dispatch was open or filled, that anyone else was promoted or transferred into dispatch, or that he was treated less favorably than younger employees. Officer Anguelov was hired as a full-time patrol officer, began some dispatch officer training while Mr. DeGourville was off work in June 2011, but remained a patrol officer and was not hired as a dispatch officer. (*See* Doc. # 64-1 at ¶ 18). Mr. DeGourville concedes that there were two other officers working in the dispatch area who were the same age as him. (*See* Doc. # 64-14 at No. 4(a) ("At the time there were 2 other officers working in dispatch that were about the same age as me.")). The evidence shows that during Plaintiff s employment there were five officers over the age of 40 who worked in the dispatch area of Oracle's Broomfield facility: (1) Benjamin A. who was born in 1958; (2) Gary R. who was born in 1951; (3) Jean A. who was born in 1953; (4) Glenn M. who was born in 1949; and (5) Gary D. who was born in 1944. (*See* Doc. # 64-10 at ¶ 10). Mr. DeGourville has not presented evidence to demonstrate that but for his age, he would have been hired into dispatch. Defendant Andrews is entitled to summary judgment on Mr. DeGourville's age discrimination claim.

E.    Individual Defendants

Mr. DeGourville commenced this action *in forma pauperis* pursuant to 28 U.S.C. § 1915. (*See* July 11, 2012 "Order Granting Leave to Proceed Pursuant to 28 U.S.C. §1915" (Doc. # 4)).

Mr. DeGourville seeks monetary damages for "Pain & Suffering, Loss of Life, Income, Home, dignity & Pride." (*See* Doc. # 8 at 5 of 5). He named five individuals as Defendants in addition to Defendant Andrews.

The Clerk of the Court initiated service of process on Defendants. (*See* Doc. # 11). On September 28 and October 1, 2012, Process Receipt and Return forms were filed with the court, completed by an employee of the U.S. Marshal Service and indicating that service was not executed as to Defendants Dahl, Wibben, Bradley, Parrish, and Gibson because they could not be located at the address provided by Mr. DeGourville. (*See* Docs. # 14, # 15, # 16, # 17, and # 18). At the Preliminary Scheduling Conference held on May 28, 2013, the court reminded Mr. DeGourville that Defendants Dahl, Wibben, Bradley, Parrish, and Gibson had not yet been served in this civil action. (*See* Courtroom Minutes/Minute Order (Doc. # 37)). Based upon the information before the court, these Defendants cannot be served at the address provided by Mr. DeGourville.

A court cannot obtain personal jurisdiction over a party without proper service of process. *See Murphy Brothers, Inc. v. Mitchetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) ("Before a . . . court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.") (citation omitted); *Oklahoma Radio Associates v. F.D.I.C.*, 969 F.2d 940, 943 (10th Cir. 1992) ("Rule 4 service of process provides the mechanism by which a court having venue and jurisdiction over the subject matter of an action asserts jurisdiction over the person of the party served") (citations omitted); *Lampe v. Xouth, Inc.*, 952 F.2d 697, 700-01 (3d Cir. 1991) ("A court obtains personal jurisdiction over the parties when the complaint and summons are properly served upon the defendant. Effective service of process is therefore a prerequisite to proceeding further in a case."). The Federal Rules of Civil Procedure provide that

32

the court shall dismiss an action without prejudice as to any defendant who has not been served within 120 days of the filing of the action:

> If a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). Mr. DeGourville named the individual Defendants in his Amended Complaint filed on August 10, 2012. (*See* Docs. # 6, # 8). As of this date, more than 720 days have passed since the filing of the Amended Complaint and the record before the court indicates that Defendants Dahl, Wibben, Bradley, Parrish, and Gibson have not been served in this action. To date, these Defendants have not filed a waiver of service or appeared in the case.

While a *pro se* plaintiff proceeding *in forma pauperis* is entitled to rely on the U.S. Marshal for service of the summons and complaint, the U.S. Marshal and the Clerk of the Court have performed their duties to serve the individual Defendants and the court need not require the U.S. Marshal to search for or make any further attempts to serve them. Sufficient time has been afforded and sufficient efforts have been made to serve Defendants Dahl, Wibben, Bradley, Parrish, and Gibson such that they may properly be dismissed without prejudice from this civil action for failure to effect service within the time limit of Fed. R. Civ. P. 4(m) and pursuant to D. C. COLO. LR 41.1 for failure to prosecute.

Further, personal capacity suits against individual supervisors are inappropriate under Title VII and the ADEA. *See Butler v. City of Prairie Village, Kan.*, 172 F.3d 736, 743 (10th Cir. 1999) (recognizing that Title VII, ADA and the ADEA all prohibit employer discrimination, and do not authorize personal capacity suits against individuals who do not otherwise qualify as employers under the statutory definitions) (internal quotation marks and citations omitted). *See also*

*Schrader v. E.G. & G.*, Inc., 953 F. Supp. 1160, 1165 (D. Colo. 1997) ("Title VII does not impose liability upon individual defendants"); *Smith v. Lomax*, 45 F.3d 402, 403 n. 4 (11th Cir.1995) (defendants cannot be held liable in their individual capacities under the ADEA or Title VII); *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 511 (4th Cir. 1994) ("[T]he ADEA limits civil liability to the employer."); *Miller v. Maxwell's Int'l, Inc.*, 991 F.2d 583, 587–88 (9th Cir.1993) (Title VII and ADEA claims against defendants in their individual capacities properly dismissed for failure to state a claim). For this reason also, Mr. DeGourville's Title VII and ADEA claims against the individual Defendants Dahl, Wibben, Bradley, Parrish, and Gibson are properly dismissed.

As to Mr. DeGourville's FMLA claim, some courts have concluded that individual liability may be imposed under the FMLA. *See, e.g., Buser v. Southern Food Service, Inc.*, 73 F.Supp.2d 556, 562 (M.D.N.C.1999) (collecting cases); *Meara v. Bennett*, 27 F.Supp.2d 288, 291 (D.Mass.1998) ("individuals are contemplated as defendants under [the FMLA]"); *Mercer v. Borden*, 11 F.Supp.2d 1190, 1191 (C.D.Cal.1998) (holding that "individuals are potentially subject to liability under the FMLA).

F.      Plaintiff's Claim for Violation of the FMLA

Based on no more than his personal belief, Mr. DeGourville alleges that Andrews violated the FMLA when it terminated his employment on September 19, 2011, after he returned from medical leave. (*See* Doc. # 64-7 at 52-53 of 62; Doc. # 8 at ¶ 9 ("Medical Act")). The FMLA provides that eligible employees of certain employers have the right to take unpaid medical leave for up to twelve work weeks in a twelve month period for a qualifying serious health condition. *See* 29 U.S.C. § 2612(a)(1). To qualify as an "eligible employee" under the FMLA, an employee must have been employed by the employer for at least twelve months (which need not be continuous)

and have at least 1,250 hours of service with the employer for the previous twelve months before a leave request is made. 29 U .S.C. § 2611(2)(A); 29 C.F.R § 825.110. *See also Pirant v. United States Postal Serv.*, 542 F.3d 202, 207 (7th Cir. 2008) ("The right of family leave is conferred only on employees who have worked at least 1,250 hours in the previous 12 months.").

First, Andrews is entitled to summary judgment on Mr. DeGourville's FMLA claim because Mr. DeGourville was not an eligible employee entitled to the FMLA' s protections. He concedes that he was employed with Andrews for less than 12 months, from on or about March 10, 2011 until September 19, 2011. (*See* Doc. # 64-6 at 5 of 59; Doc. # 64-7 at 41 of 62; Doc. # 64-19 at 1 of 2, No. 1). Second, the evidence shows that he did not work more than 1,250 hours during the approximately six months that he was employed at Andrews. (*See* Doc. # 64-10 at ¶¶ 7-9; Doc. # 64-19 at 1 of 2, No. 2; Doc. # 64-10 at ¶ 9). *See Rich v. Delta Air Lines, Inc.*, 921 F. Supp. 767, 773 (N.D. Ga. 1996) ("FMLA expressly and unequivocally provides that for an employee to be eligible for protection under the Act, she must have worked 1,250 hours for her employer in the previous twelve-month period.") (citing 29 U.S.C. § 2611(2)(A); 29 C.F.R. § 825.110). Because Mr. DeGourville does not present any evidence demonstrating that he was an eligible employee entitled to the protections of the FMLA, Andrews is entitled to summary judgment on the FMLA claim.

In conclusion, the court RECOMMENDS that "Defendant Andrews International's Motion for Summary Judgment" (filed January 27, 2014) (Doc. # 64) be GRANTED and that judgment be entered on the Amended Complaint (Doc. # 8) in favor of Defendant and against Plaintiff.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado this 6th day of August, 2014.

BY THE COURT:


  s/Craig B. Shaffer
United States Magistrate Judge